# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| ARCHON FIREARMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:20-cv-00227-GMN-NJK |
| vs. | ) | |
| | ) | **ORDER** |
| RUAG AMMOTEC GMBH, RUAG | ) | |
| HUNGARIAN AMMOTEC, INC., RUAG | ) | |
| HOLDING AG, ARSENAL FIREARMS | ) | |
| LTD., AF PRO TECH GROUP KFT, | ) | |
| ARSENAL FIREARMS USA, LLC | ) | |
| RUAG AMMOTEC MAGY ARORSZAGI | ) | |
| ZRT., RUAG AMMOTEC USA, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Pending before the Court are two Motions to Remand, (ECF Nos. 36, 35), separately filed by Plaintiff Archon Firearms, Inc. ("Plaintiff") and Defendants Arsenal Firearms, Ltd., AF Pro Tech Group KFT, and Arsenal Firearms USA, LLC (collectively, "Arsenal Defendants"). Defendants RUAG Ammotec GmbH, RUAG Hungarian Ammotec, Inc. and RUAG Holding AG (collectively, "RUAG Defendants") filed a Response, (ECF No. 46), and Plaintiff and Arsenal Defendants each filed a Reply, (ECF Nos. 58–59).

Also pending before the Court is the Motion to Dismiss, (ECF No. 10), filed by RUAG Hungarian Ammotec, Inc. and RUAG Holding AG.  Plaintiff filed a Response, (ECF No. 41), and RUAG Hungarian Ammotec, Inc. and RUAG Holding AG filed a Reply, (ECF No. 48).

 For the reasons discussed below, the Court **GRANTS** Plaintiff's and Arsenal Defendants' Motions to Remand (the "Motions to Remand") and **DENIES as moot** RUAG Hungarian Ammotec, Inc. and RUAG Holding AG's Motion to Dismiss.

1

## I.   **BACKGROUND**

2   The case arises from the alleged breach and interference with a firearms manufacturing

3 and distribution contract Plaintiff entered with Arsenal Defendants. (Compl. ¶¶ 16–21).  On

4 January 23, 2020, Plaintiff filed its Complaint in Clark County District Court, naming RUAG

5 Defendants, Arsenal Defendants, RUAG Schweiz AG, and RUAG Ammotec Magyarorszagi

6 Zrt.[1] as defendants (collectively, "Defendants"). (Compl. ¶1).  That same day, Plaintiff served a

7 copy of the Summons and Complaint to each Defendant via personal service. (Summonses

8 Returned Executed, ECF Nos. 13–20).

9   On the day Plaintiff effectuated service, Christoph Eisenhardt ("Eisenhardt"), CEO of

10 RUAG Ammotec GmbH, and Dimitry Streshinsky ("Streshinsky"), authorized representative

11 for Arsenal Defendants, attended the 2020 SHOT Show Convention at the Sands Expo Center,

12 located in Las Vegas, Nevada. (*See* Summonses Returned Executed, ECF Nos. 13–20).  At the

13 convention, Eisenhardt and Streshinsky personally met to discuss logistics regarding the

14 terminated contract between RUAG Defendants and Arsenal Defendants. (*See* Decl. Christoph

15 Eisenhardt ("Eisenhardt Decl.") ¶ 10, Ex. 2 to RUAG Defs.' Resp. to Mot. Remand, ECF No.

16 46-2).  Upon leaving the meeting, Plaintiff served RUAG Defendants by personally serving

17 Eisenhardt with a copy of the Summons and Complaint. (*See* Summonses Returned Executed,

18 ECF Nos. 13–14, 16); (Eisenhardt Decl. ¶ 14, RUAG Defs.' Resp. to Mot. Remand).

19 Streshinsky, who walked out of the meeting with Eisenhardt, witnessed Plaintiff serve

20 Eisenhardt with an envelope. (Decl. of Dimitry Streshinsky ("Streshinsky Decl.") ¶ 2, Ex. 2 to

21 Arsenal Defs.' Mot. Remand, ECF No. 36); (*see also* Eisenhardt Decl. ¶ 14, RUAG Defs.'

22 Resp. to Mot. Remand).  After Plaintiff effectuated service on Eisenhardt, Eisenhardt and

23 Streshinsky went into another meeting room. (RUAG Defs.' Resp. to Mot. Remand, 2:25–27,

24

---

25 [1] In their Petition for Removal, (ECF No. 1), RUAG Defendants state that "RUAG Ammotec Magyarorszagi ZRT is the same entity as RUAG Hungarian Ammotec, Inc." (*See* RUAG Defs.' Pet. for Removal 2:28, n.1, ECF No. 1).

ECF No. 46).  Approximately 24 minutes later, Plaintiff served Arsenal Defendants by personally serving Streshinsky with a copy of the Summons and Complaint. (Streshinsky Decl. ¶ 2, Ex. 2 to Arsenal Defs.' Mot. Remand).

The parties dispute the events that occurred after Streshinsky received Plaintiff's Summons and Complaint.  Streshinsky claims that shortly after receiving his copy of the Summons and Complaint, Streshinsky told Eisenhardt that he had similarly received the Complaint on behalf of Arsenal Parties. (Streshinsky Decl. ¶ 3, Ex. 2 to Arsenal Defs.' Mot. Remand).  Eisenhardt, on the other hand, claims that he has "no recollection of any such conversation." (RUAG Defs.' Resp. to Mot. Remand 3:12–14).

The next day, Streshinsky sent Matthias Vogel ("Vogel"), Vice President of RUAG Ammotec GmbH, a message via Whatsapp, writing:

> Hey Matthias, Christoph says RUAG doesn't care about such a [sic] insignificant shit as Archon suing RUAG as RUAG has zero liability . . I was served as well . . Now fun begins. On another hand we agreed I will receive [sic] counter proposal in a next few days as lawsuit has nothing to do with our contractual relations.

(Ltr. from Christopher Kircher to Kelly Dove ("Letter"), Ex. C to RUAG Defs.' Resp. to Mot. Remand, ECF No. 46-1).  Matthias responded, "Well, it stays exciting!" (*Id.*).

On January 31, 2020, RUAG Defendants removed the case to this Court. (RUAG Defs.' Pet. for Removal, ECF No. 1).  In the Petition for Removal ("Petition"), RUAG Defendants alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332. (*Id.* at 3:2–8).  Plaintiff later moved to remand the case to Clark County District Court, arguing that RUAG Defendants' Petition was procedurally deficient because RUAG Defendants failed to affirmatively explain the absence of Arsenal Defendants' consent to the Removal. (Pl.'s Mot. Remand 1:7:9–15, ECF No. 36).  Arsenal Defendants also moved to remand the case to Clark County District Court, similarly arguing that the RUAG Defendants knew or should've known that the Arsenal Defendants had been served, but failed to seek and receive consent from each of the Arsenal

Defendants. (Arsenal Defs.' Mot. Remand 2:2–9, ECF No. 35).  Both Plaintiff and Arsenal Defendants additionally contest that Arsenal Defendants were fraudulently joined, which RUAG Defendants raised in their Petition for Removal.  (Pl.'s Mot. Remand 12:1); (Arsenal Defs.' Mot. Remand 6:1).  In their Response, RUAG Defendants argue that their Petition was not improper because they did not know that Arsenal Defendants had been served with a copy of the Summons and Complaint, and that Arsenal Defendants could otherwise be severed from the case because they were fraudulently joined. (RUAG Defs.' Resp. to Mot. Remand 16:8–10, 20:23–21:2).

## II.   <u>LEGAL STANDARD</u>

A court may order remand pursuant to 28 U.S.C. § 1447(c) "for either a lack of subject matter jurisdiction or for a procedural defect in the actual removal procedure." *Yoga et al. v. U.S. Bank et al.*, No. 3:11-cv-316 RCJ, 2011 WL 5180978, at *2 (D. Nevada Oct. 27, 2011) (citing § 1447(c)).  To proper remove a case, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A); *see also Chicago Rock Island & Pacific Railway Co. v. Martin*, 178 U.S. 245, 248 (1900) (holding that all defendants must consent to or join in a petition for removal).  "Where fewer than all the defendants have joined in a removal action, the removing party has the burden under section 1446(a) to explain affirmatively the absence of any co-defendants in the notice for removal." *Prize Frize, Inc. v. Matrix (U.S.), Inc.*, 167 F.3d 1261, 1266 (9th Cir. 1999), *superseded by statute on other grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006).

The Ninth Circuit, however, recognizes four exceptions to the rule requiring that all defendants consent to the removal of the action, otherwise known as the "rule of unanimity." *Voga v. U.S. Bank*, No. 3:11-CV-316-RCJ-VPC, 2011 WL 5180978, at *3 (D. Nev. Oct. 27, 2011).

First, the rule does not apply if the defendant who has not joined in the petition was not properly served before the notice of removal was filed. *Salveson v. W. States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir.1984) (*superseded by statute on other grounds*). Second, nominal defendants need not consent to the removal. *Hewitt v. City of Stanton*, 798 F.2d 1230, 1232–33 (9th Cir.1986). Third, when an independent claim which is removable under 28 U.S.C. § 1441(c) is joined with claims that are not removable, only the defendants to the independent claim must be joined in the notice of removal. *Toshavik v. Alaska Airlines, Inc.*, No. N99-2-cv-JWS, 1999 WL 33456492, at *1 (D. Alaska Nov. 15, 1999) (citing 14C Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3731, at 267 (3d. ed.1998)). Finally, parties which have been joined fraudulently are not required to consent in the removal. *United Computer Sys., Inc. v. AT & T Corp.*, 298 F.3d 756, 762 (9th Cir. 2002).

*Voga v. U.S. Bank*, No. 3:11-CV-316-RCJ-VPC, 2011 WL 5180978, at *3 (D. Nev. Oct. 27, 2011). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc.*, 167 F.3d at 1265; *see also Bonadeo v. Lujan*, No. CIV 08–0812 JB/ACT, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009) ("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").

## III.   DISCUSSION

In their Motions for Remand, Plaintiff and Arsenal Defendants primarily argue that remand is proper because RUAG Defendants failed to seek Arsenal Defendants' consent prior to filing their Petition for Removal. (Pl.'s Mot. Remand 8:22); (Arsenal Defs.' Mot. Remand 5:9). Because Arsenal Defendants were properly served with process and RUAG Defendants knew, or should have known, that Arsenal Defendants were served based on the conversation on WhatsApp between Streshinsky and Vogel, Plaintiff and Arsenal Defendants request the Court to remand this case. (*Id.*). Additionally, Plaintiff and Arsenal Defendants contest RUAG Defendants' allegation in its Petition for Removal that Arsenal Firearms, USA was fraudulently joined. (Pl.'s Mot. Remand 12:1); (Arsenal Defs.' Mot. Remand 6:1). Plaintiff and Arsenal Defendants argue that Arsenal USA and Plaintiff are not the same entity. (*Id.*).

In its Response, RUAG Defendants argue that they were not aware that Arsenal Defendants were served at the time they filed their Petition and, therefore, were not required to seek Arsenal Defendants' consent prior to removal. (RUAG Defs.' Resp. to Mot. Remand 11:1). Even if the Court found that RUAG Defendants failed to seek Arsenal Defendants' consent, RUAG Defendants contend that removal was proper because Arsenal Defendants were fraudulently joined. (*Id*. at 20:15).

The Court finds that removal was proper because: (1) RUAG Defendants knew or should have known that Arsenal Defendants were served prior to filing their Petition and (2) RUAG Defendants have not met their burden to show Arsenal Defendants were fraudulently joined.

**A. Service of Process**

Plaintiff and Arsenal Defendants argue that RUAG Defendants' failure to seek Arsenal Defendants' consent prior to removal warrants remanding this case to state court. (Pl.'s Mot. Remand 8:22); (Arsenal Defs.' Mot. Remand 5:9). Plaintiff and Arsenal Defendants claim that RUAG Defendants knew or should have known that Arsenal Defendants were served prior to their Petition for Removal. (*Id*.). Because Arsenal Defendants were properly served at the 2020 SHOT Show Convention and the evidence shows that RUAG Defendants knew, or should have known, that Arsenal Defendants were also served, the Court finds that removal was improper without Arsenal Defendants' consent.

"Joinder in or consent to the removal petition must be accomplished by only those defendants: (1) who have been served; and (2) whom the removing defendant(s) actually knew or should have known had been served." *Sparrow v. Teknovation Corp.*, No. CV-S-05-0979-RLH/PAL, 2005 WL 8161891, at *5–6 (D. Nev. Nov. 1, 2005) (citing *Milstead Supply Co. v. Casualty Ins. Co.*, 797 F. Supp. 569, 573 (W.D. Tex. 1992)). The second requirement includes both served defendants "whom the removing defendant(s) actually knew had been served" and

defendants "whom the removing defendant should have been aware of because of the constructive notice of the filing of the return of service in state court." *Id.*

### i.   Proper Service of Co-Defendants

Arsenal Defendants were properly served on January 23, 2020 via personal service on Streshinsky. (Summonses Returned Executed, ECF Nos. 18–20).  Under Federal Rule of Civil Procedure 4(h)(1)(B), a domestic or foreign corporation may be served "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B).  In addition, "service can be made 'upon a representative so integrated with the organization that he will know what to do with the papers.  Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service.'" *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988) (quoting *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F. Supp. 1237, 1251 (S.D.N.Y. 1977)).

Here, Plaintiff properly served Arsenal Defendants by personally serving Streshinsky because Streshinsky is the authorized representative for Arsenal Defendants. (Streshinsky Decl. ¶ 1, Ex. 2 to Arsenal Defs.' Mot. Remand).  In fact, the parties in this case do not dispute that Plaintiff properly served Arsenal Defendants by serving Streshinsky.  The Court, therefore, evaluates whether RUAG Defendants "actually knew or should have known" that Arsenal Defendants had been served prior to filing their Petition for Removal. *See Sparrow*, 2005 WL 8161891 at *5–6 (citing *Milstead Supply Co.*, 797 F. Supp. at 573).

### ii.   Actual and Constructive Knowledge of Service

Plaintiff and Arsenal Defendants argue that RUAG Defendants knew, or should have known, that Arsenal Defendants were served prior to filing their Petition based on the WhatsApp conversation between Streshinsky, authorized representative for Arsenal

Defendants, and Vogel, Vice President for RUAG Ammotec GmbH. (Pl.'s Mot. Remand 8:22);
(Arsenal Defs.' Mot. Remand 5:9).  RUAG Defendants contest that, at the time of removal,
they had neither actual nor constructive notice that any of the Arsenal Defendants were served.
(RUAG Defs.' Resp. to Mot. Remand 16:8–10).  Regarding actual notice, RUAG Defendants
claim that the authorized representatives for RUAG Defendants, Eisenhardt and Vogel, are not
lawyers and therefore, could not be expected to know the legal implications of the word
"served." (*Id*. at 16:18–17:10).  Furthermore, RUAG Defendants contend that they did not have
constructive notice because Plaintiff never filed return of summons in state court for any of the
defendants. (*Id*. at 18:3–20:14).

The Court notes that there is conflicting authority within the Ninth Circuit concerning
the extent of a removing defendant's obligation to ascertain whether a non-removing defendant
has been served at the time the notice of removal is filed. "Some district courts have held that
the 'due diligence' required by a removing defendant is not satisfied by merely checking if
proofs of service have been filed on the state court docket," while "[o]ther district courts have
found to the contrary, holding that defendants exercise reasonable diligence by checking the
docket for filed proofs of service prior to filing a removal notice." *AGI Publishing, Inc. v. HR
Staffing, Inc.*, No. 1:12-cv-0879-AWI-SKO, 2012 WL 3260519, at *4 (E.D. Cal. Aug. 8, 2012).

Irrespective of the level of diligence required, there is clear evidence in the record that
RUAG Defendants had actual notice that Arsenal Defendants had been served prior to filing
their Petition for Removal.  In a conversation between Streshinsky, authorized representative
for Arsenal Defendants, and Vogel, Vice President of RUAG Ammotec GmbH, on January 24,
2020, Streshinsky told Vogel, "Christoph said RUAG doesn't care about such an insignificant
shit as Archon suing RUAG as RUAG has zero liability . . *I was served as well* . ." (Letter, Ex.
C to RUAG Defs.' Resp. to Mot. Remand) (emphasis added).  This message unequivocally
shows that RUAG Defendants received communication that Arsenal Defendants had been

served before RUAG Defendants petitioned for removal.  While Vogel claims he did not pass along Streshinksy's message to RUAG Defendants' counsel, the knowledge of an officer is imputed to the corporation when the agent obtains information "while acting in the course of his employment and within the scope of his authority, even though the officer or agent does not in fact communicate his knowledge to the corporation." *USACM Liquidating Trust v. Deloitte & Touche LLP*, 764 F. Supp. 2d 1210, 1217 (D. Nev. 2011) (citing *Strohecker v. Mut. Bldg. & Loan Ass'n of Las Vegas*, 55 Nev. 350, 34 P.2d 1076, 1077 (1934)).  Thus, Vogel's knowledge was imputed to RUAG Defendants when Vogel, Vice President for RUAG Ammotec GmbH, sought information from Streshinsky, authorized representative for Arsenal Defendants, about a past business meeting.  The conversation on WhatsApp, therefore, demonstrates that the RUAG Defendants knew or, at the minimum, should have known that Arsenal Defendants were served on January 23, 2020.

Because RUAG Defendants knew that Arsenal Defendants were served on January 24, 2020, RUAG Defendants were required to seek Arsenal Defendants' consent when they filed their Petition for Removal seven days later.  Accordingly, because RUAG Defendants failed to seek Arsenal Defendants' consent in the Petition for Removal, the Court must remand the case unless RUAG Defendants' can show that Arsenal Defendants were fraudulently joined.

**B.  Fraudulent Joinder**

Plaintiff and Arsenal Defendants additionally contest RUAG Defendants' allegation in their Petition for Removal that Arsenal Firearms, USA was fraudulently joined. (Pl.'s Mot. Remand 12:1); (Arsenal Defs.' Mot. Remand 6:1).  RUAG Defendants, in their Response, argue that Arsenal Defendants did not need to consent to removal because Arsenal Defendants were fraudulently joined. (RUAG Defs.' Resp. to Mot. Remand 16:15).  Specifically, RUAG Defendants argue that: (1) Plaintiff and Arsenal USA are the same entity; (2) Arsenal Defendants' interests align with Plaintiff; and (3) Plaintiff and Arsenal Defendants appear to act

collusively. (*Id.* at 16:23–17:2).  In their Replies, Plaintiff and Arsenal Defendants contend that Arsenal Firearms, USA and Plaintiff are not the same entity. (Pl.'s Reply 12:1, ECF No. 59); (Arsenal Defs.' Reply 6:1, ECF No. 58).

The Ninth Circuit recognizes "two ways to establish improper joinder: '(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.' " *Hunter v. Phillip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quoting *Smallwood v. Illinois Cent. RR. Co.*, 385 F.3d 568, 573 (5th Cir. 2004)). "Rather than focusing on the 'mental state' of the plaintiff, the fraudulent joinder inquiry focuses on the validity of the legal theory being asserted against the non-diverse defendant." *Davis v. Prentiss Properties Ltd., Inc.*, 66 F. Supp. 2d 1112, 1114 (C.D. Cal. 1999).

The problem with the fraudulent joinder inquiry lies in the fact that in order to determine if it possesses jurisdiction over claims against an allegedly fraudulent party, the Court must to some degree determine the validity of those same claims over which the Court may not have jurisdiction.  Therefore, the Court must walk a very fine line: "it must consider the merits of a matter without assuming jurisdiction over it." *See id.*; *see also B.*, *Inc. v. Miller Brewing Co.*, 663 F.2d 545, 554 (5th Cir. 1981) (stating the Court must not "lose sight of the important questions of federal jurisdiction" implicated in fraudulent joinder cases).

In fraudulent joinder determinations, "[d]efendants alleging a fraudulent joinder are permitted to make a showing of facts indicating fraudulent joinder." *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 996 (D. Nev. 2005) (citing *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998)); *see also Morris*, 236 F.3d at 1068 (citing a 5th Circuit opinion for the principle that "[f]raudulent joinder claims may be resolved by 'piercing the pleadings' and considering summary judgment-type evidence").  However, though courts may look to a showing of facts in conducting a fraudulent joinder analysis, the burden on the defendant to prove fraudulent joinder is higher than the burden required for Rule 56 summary judgment or

even Rule 12(b)(6) dismissal. *See Morris*, 236 F.3d at 1067 ("Joinder of a non-diverse defendant is deemed fraudulent . . . if the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state."); *Davis*, 66 F. Supp. 2d at 1115 ("[S]ome room must exist between the standard for dismissal under Rule 12(b)(6) . . . and a finding of fraudulent joinder.  A court's Rule 12(b)(6) inquiry is whether the complaint states a cognizable legal theory.  To constitute fraudulent joinder, the non-diverse claim must not only be unsuccessful, it must be untenable ab initio.") (citations omitted).  Some district courts in the Ninth Circuit have compared the standard for fraudulent joinder to the one under Rule 11, where joinder would not be fraudulent unless the claim is shown to be frivolous. *See*, *e.g.*, *Davis*, 66 F.Supp.2d at 1114.  Still others have articulated a standard of mere possibility that the plaintiff will be able to establish a cause of action against the party in question. *See*, *e.g.*, *Soo v. United Parcel Servs., Inc.*, 73 F.Supp.2d 1126, 1128 (N.D. Cal. 1999) (A defendant will be deemed to be fraudulently joined only if "after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned.") (citation omitted).  Accordingly, regardless of the exact standard, the party seeking removal bears "a very heavy burden of proving that the joinder of the in-state party was improper." *Hunter*, 582 F.3d at 1044.

Here, RUAG Defendants claim that Arsenal Firearms, USA was fraudulently joined because Arsenal Firearms, USA and Plaintiff are effectively the same entity. (RUAG Defs.' Resp. to Mot. Remand 16:15).  Additionally, RUAG Defendants argue that Plaintiff and Arsenal Firearms, USA's interests align and further evidence that they are colluding[2]. (*Id.*).  To

---

[2] In support of their claim that Arsenal Firearms, USA and Plaintiff are colluding, RUAG Defendants point to a statement made by Streshinsky, authorized representative for Arsenal Defendants, on January 23, 2020 in which he allegedly threatened Eisenhardt, CEO of RUAG Ammotec GmbH, with siding with Plaintiff in the event of a lawsuit. (RUAG Defs.' Resp. to Mot. Remand 24:11–14).  RUAG Defendants claim that Streshinsky's threat has held true, as evidenced by a recent filing, (Mot. to Extend (First Request), ECF No. 33), in which Plaintiff and

prevail on these arguments, RUAG Defendants must show that Plaintiff could not "state a reasonable or colorable" breach of contract claim against Arsenal Firearms, USA "under the applicable substantive law." *Weeping Hollow Ave. Tr. v. Spencer*, 831 F.3d 1110, 1113 (9th Cir. 2016).  Plaintiff has alleged a multitude of claims against Arsenal Defendants, including, *inter alia*, breach of contract, intentional interference with contractual claims, breach of express warranty, negligent misrepresentation, intentional misrepresentation, and breach of the implied warranty of merchantability. (*See* Compl. ¶¶ 70–149).  These claims are all valid claims under Nevada law.  RUAG Defendants focus the majority of their briefing highlighting the similarities between Arsenal Firearms, USA and Plaintiff.  Plaintiff's claims, however, still have merit regardless of the similar interests, corporate forms, and alleged collusive behavior of Arsenal Firearms, USA and Plaintiff. *See Baeza v. Tibbetts*, No. CIV 06–0407 MV/WPL, 2006 WL 2863486, at *1 n.1 (D.N.M. July 7, 2006) ("Fraudulent joinder is a term of art. It does not reflect on the integrity of plaintiff or counsel, but rather exists regardless of the plaintiff's motives when the circumstances do not offer any other justifiable reason for joining the defendant."); *see also Knutson*, 358 F. Supp. 2d at 993 (holding that "to establish that there has been no fraudulent joinder, a plaintiff need only have one potentially valid claim against a non-diverse defendant").  RUAG Defendants have not demonstrated that Plaintiff is unable to establish a cause of action against Arsenal Firearms, USA.  The Court thus finds that RUAG Defendants failed to meet their burden to show that Arsenal Firearms, USA was fraudulently joined.  Accordingly, the Court grants Plaintiff and Arsenal Defendants' requests to remand the case.

---

Arsenal Defendants allegedly reveal that their respective attorneys have been in contact since at least February 13, 2020. (*Id*. at 24:13–20).  Furthermore, RUAG Defendants suggest that Arsenal Defendants have exhibited unusual litigation behavior by delaying disclosure of their counsel to RUAG Defendants and failing to act in this case (with the exception of requesting remand to state court). (*Id*. at 24:21–25:3).

1

## IV.    CONCLUSION

2    **IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, (ECF No. 36), and

3    Arsenal Defendants' Motion to Remand, (ECF No. 35), are **GRANTED**.

4    **IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss, (ECF No. 10), is

5    **DENIED as moot**.

6    **DATED** this __30__ day of November, 2020.

7

8    _____

9    Gloria M. Navarro, District Judge
     UNITED STATES DISTRICT COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25